# United States Court of Appeals
## For the First Circuit

No. 08-2116

NORTHWEST BYPASS GROUP; MORTON C. TUTTLE;
CAROLYN H. TUTTLE; LESLIE J. LUDTKE,

Plaintiffs,

v.

US ARMY CORPS OF ENGINEERS; US ARMY CORPS OF ENGINEERS, CHIEF;
US ARMY CORPS OF ENGINEERS, NEW ENGLAND DISTRICT COMMANDER,

Defendants,

CITY OF CONCORD,

Defendant, Appellee,

CONCORD HOSPITAL; ST. PAUL'S SCHOOL,

Intervenor Defendants, Appellees,

GORDON R. BLAKENEY, JR.,

Objector, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. John A. Woodcock, Jr.,[*] U.S. District Judge]

Before
Lynch, Chief Judge,
Farris,[**] and Boudin, Circuit Judges.

---

[*]Of the District of Maine, sitting by designation.

[**]Of the Ninth Circuit, sitting by designation.

Edmund J. Boutin with whom Jonathan M. Boutin, John L. Altieri, Jr. and Boutin & Altieri, P.L.L.C. were on brief for appellant.

E. Tupper Kinder with whom Nelson, Kinder, Mosseau & Saturley, P.C. was on brief for appellee City of Concord.

June 16, 2009

**BOUDIN**, **Circuit Judge**.    This is an appeal from the district court's order sanctioning plaintiffs' counsel, Gordon R. Blakeney, for vexatious conduct in filing against the City of Concord, New Hampshire, motions seeking to disqualify its counsel and to obtain sanctions.    Those motions alleged that certain communications between the city and two plaintiffs violated a federal criminal obstruction-of-justice statute.    The relevant facts are as follows.

In the underlying federal-court suit, Blakeney represented plaintiffs, including himself and his family, who had challenged an Army Corps of Engineers permit authorizing the construction of a bypass highway through a portion of Concord.  Two of the plaintiffs, Morton and Carolyn Tuttle, owned a designated historical property, which had to be relocated because of the construction.    The city had been in discussions with the Tuttles for over a decade in order to find a suitable relocation lot.

In July 2006, the city found a potential parcel of land but because it was smaller than the Tuttles' lot, the city had sought to obtain necessary variances from the City Zoning Board. After the city failed in its effort, a city employee, Martha Drukker, contacted the Tuttles on January 12, 2007, explaining to them the Zoning Board's denial of the variances and suggesting that the city might not investigate other possible lots in light of the Tuttles' participation in a lawsuit against the city.

Morton Tuttle demurred at the suggestion that he was suing the city or that Blakeney was suing on his behalf. The city then sent a letter to Blakeney on February 6, 2007, saying:

> Recently, the Tuttles have stated that they are not parties to, nor represented by you in the lawsuit you have filed against the City and the Army Corps of Engineers challenging the issuance of the 404 Permit, and further that they do not wish to be a part of such a lawsuit. Under the circumstances, please provide written clarification that you are authorized to represent Mr. and Mrs. Tuttle in this pending Federal Court litigation.

Blakeney then submitted a "right-to-know" request, N.H. Rev. Stat. Ann. ch. 91-A (2007), for any communications between the Tuttles and the city and, obtaining notes made by Drukker, Blakeney then filed in his pending federal court bypass case a motion for sanctions and a motion to disqualify the city's counsel. The city opposed both motions, filed its own motion for sanctions and sought attorneys' fees for what it charged was vexatious conduct by Blakeney.

The district court denied Blakeney's motions but postponed, until the bypass case was decided on the merits, the question whether to sanction Blakeney's filing of the motions. Then, after granting summary judgment for the defendants on the merits, the district court returned to the sanctions issue and concluded, after a hearing based upon filings from both sides, that Blakeney's motions had been "ill-founded," "frivolous," and "without legal or factual foundation." The court ordered Blakeney

-4-

to pay $7,520.50 in attorneys' fees to the City of Concord and two other affected parties: Concord Hospital and St. Paul's School.

Blakeney now appeals.  Legal issues are reviewed de novo, factual findings for clear error, and judgment calls under a reasonableness standard.  Baella-Silva v. Hulsey, 454 F.3d 5, 12 (1st Cir. 2006); Lichtenstein v. Consol. Servs. Group, Inc., 173 F.3d 17, 22-23 (1st Cir. 1999).  Because the trial judge is close to the scene, that judge has a lot of latitude in respect to disciplinary actions.  But we are conscious of the impact of sanctions on attorneys and take our oversight role seriously.

Initially, the district judge proposed to apply sanctions under Rule 11(b), Fed. R. Civ. P. 11(b), which inter alia applies to filings made for "any improper purpose"; but the court accepted Blakeney's contention that Rule 11 should not be invoked and issued a new order resting upon 28 U.S.C. § 1927 (2006), which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously"  may be required "personally" to pay resulting excess costs, expenses, and attorneys' fees.

In its final order, the district court quoted our own glosses on section 1927: that it applies when the lawyer displays "a serious and studied disregard for the orderly process of justice," Rossello-Gonzalez v. Acevedo-Vila, 483 F.3d 1, 7 (1st Cir. 2007) (internal quotation marks omitted); must "be more severe than mere negligence, inadvertence, or incompetence," Cruz v.

<u>Savage</u>, 896 F.2d 626, 632 (1st Cir. 1990), but it does "not require a finding of subjective bad faith," <u>id.</u> at 631-32, nor repeated infractions.  <u>In re Ruben</u>, 825 F.2d 977, 984 (6th Cir. 1987).

The district court repeated, as it had said in denying Blakeney's original motions for sanctions and to disqualify city counsel, that the allegations of criminal misconduct and obstruction of justice were ill-founded, plainly groundless, frivolous, far-fetched and lacked a valid premise.  The sole sanction was that Blakeney pay the city $5,072.50 for time spent in opposing the motions and to pay the other two parties seeking attorneys' fees $2,448.00 for the same purpose.

On appeal, Blakeney objects to language in the district court's earlier Rule 11 order stating that "serious allegations of criminal conduct against an opposing party . . . including the suggestion of a referral by the court to the federal prosecutor, should have been preceded by sober contemplation, convincing, if not irrefutable evidence of criminality" and "certainty of the applicable law."  This standard, Blakeney contends, is legal error infecting the court's sanctions order.

These quoted phrases, taken in the abstract, do overstate what we think is required of lawyers charged with possible misconduct.  On less than certainty or irrefutable evidence of criminality, a lawyer may well be free to raise concerns about possibly wrongdoing or criminal conduct.  But almost everything

-6-

depends upon circumstances: how and in what terms charges are made, against whom, with what degree of accuracy, with what support or groundwork, and for what purpose.

The language that Blakeney criticizes was used in the district court's _earlier_ order, which was effectively supplanted by the order now under review relying on section 1927. In describing the basis for sanctions under the latter provision, the court relied on case law and language from this court (summarized above), including precepts that Blakeney himself acknowledges. This later order is the proper starting point for our review and the district court's decision is adequately supported by the circumstances.

The Drukker affidavit explains that she had been in contact with the Tuttles over a long period in an effort to secure a substitute site; that the city had bought one lot that the Tuttles had rejected; that another was accepted by the Tuttles but the needed variances were not secured; that public objections were made that the city had already spent and done too much; and that Drukker did no more than explain to the Tuttles that it was not clear that the city would make yet another effort since they were suing the city.

It was at this point that Morton Tuttle expressed surprise that Blakeney was suing the city on their behalf and the city undertook to determine whether he was their lawyer. Nothing in Drukker's account provides the remotest basis for a charge that

Drukker--who happens not to be a lawyer--or anyone else was seeking criminally to obstruct justice. A public charge of obstruction of justice in court papers seeking action by the court was irresponsible and likely to cause further unnecessary litigation burdening the court and other parties.

Of course, Blakeney likely did not know the full background of Drukker's contact (and may not agree with her version). Yet the charge in court papers should not have been made until he had made an adequate investigation and found a realistic basis on which to make such a claim. Nothing we have seen establishes that he made such an investigation, let alone that he uncovered evidence that justified this charge. In the district court, he expressed qualified regret at what had happened.

The district judge was not required to find bad faith and did not do so; the sanction was not punitive, merely recouping for the defendants costs that should not have been inflicted on them; and the costs themselves were modest by the standards of modern litigation. This is a far cry from sanctions resting on findings of bad faith which can easily subject lawyers to bar discipline and mar a professional career. Cf. Jensen v. Phillips Screw Co., 546 F.3d 59, 64 (1st Cir. 2008) (Boudin, J., concurring).

Blakeney says that it is hindsight to rely on the Drukker affidavit since he was unaware of her assertions at the time he filed. He cites to case law that makes clear that a lawyer should

be judged by what he knows at the time that he acts. E.g., Cruz, 896 F.2d at 631. But this hardly excuses a lawyer who acts without adequate information and without making an adequate effort to secure it. Alvarado-Morales v. Digital Equip. Corp., 843 F.2d 613, 618 (1st Cir. 1988). This is not hindsight: he had to know when he filed the motion the extent of his own investigation--or lack thereof.

Blakeney did file a right-to-know request and secured handwritten notes made by Drukker of her conversation with the Tuttles, but the notes are consistent with the later affidavit. They refer to the possibility that the city may not make new efforts "with the lawsuit ongoing," to a letter from Blakeney, and to Morton Tuttle's response that "Mr. Blakeney is not representing them, they have no contract w/ him or have paid him. They said they are not suing the City or anyone else."

This is hardly the stuff of a criminal obstruction of justice charge. If anything, the notes should have given Blakeney even more pause. He asserts that he consulted with other lawyers and was told that the court "would probably want to be apprised of the challenge to his representation"; but the charges went far beyond that and by this time the city had apparently accepted Blakeney's representation that he did represent the Tuttles.

He did send a draft of his sanctions motion to the city two days before filing it and says that he received no reply. But

Blakeney still had no basis for charging Drukker with criminal conduct. Nevertheless, he moved to sanction the city for "bad faith tactics constituting obstruction of justice," devoting a number of paragraphs to unqualified accusations of criminal conduct. To quote only the summary:

> The City's foregoing unfair and bad faith acts also constitute an attempt to corruptly obstruct, influence, or impede this judicial proceeding, as well as the Tuttles's participation in it, in violation of: Title 18; United States Code, Section 1512(c)(2); Title 18; United States Code, Section 1512(d)(1); Title 18; United States Code, Section 1513(b)(1); and/or Title 18; United States Code, Section 1513(e).

Based in part on this supposed misconduct, Blakeney sought appropriate relief which "could include" (he asserted) a finding that the city had "corruptly and/or in bad faith attempted to obstruct . . . judicial proceedings"; injunctive relief against the project; compensatory damages to the Tuttles; a fine, award of attorneys' fees, or both; and "a possible referral to the U.S. Attorney or the FBI . . . ."

Zeal is be expected in litigation but not of this kind. The district court did not rest its decision on an error of law or clearly err in fact finding, nor did it abuse its discretion in concluding that Blakeney stepped over the line. But we deny the city's request for separate attorneys' fees on this appeal; Blakeney's arguments are unpersuasive but they are fair arguments and made solely in order to secure a reversal.

-10-

The district court's sanctions order is <u>affirmed</u>; the request for attorneys' fees on the appeal is <u>denied</u>.